Peter James **KEARNEY**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–65.

Court of Criminal Appeals of Oklahoma.

Aug. 13, 1975.

Frank A. Zeigler, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Peter James Kearney, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–73–2056, for the offense of Robbery with Firearms, in violation of 21 O.S.1971, § 801. His punishment was fixed at life imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's initial witness was Ronald Carter. Carter testified that on October 25, 1973, he was working at the North Tulsa Tag Agency at 4749 North Peoria in Tulsa. At 5:20 p. m. two men entered, pulled a nickel-plated revolver, and told him to lie face on the floor. The person giving this instruction was wearing wine colored trousers, a matching vest and a light colored pair of boots, Carter said. The same command to lie down was given to the only other employee present, Mrs. Betty Redford. Carter said he heard a cash drawer open. The gunman then asked if there was more money in the building. The gunman told Carter to stay prone, and Carter did so until he heard the front doorbell ring. At this point, Carter got up, ran to the front window and watched the two men walk away until they were out of sight. He then phoned the police. Carter identified the defendant as the person who held the gun during the robbery. A check of that day's receipts showed that Six Hundred Twenty-Four Dollars and Fifty Cents ($624.50 had been taken in the robbery.

Mrs. Betty Redford, the only other employee present at the time of the robbery, testified that she had her back turned to the door when the two men entered. She heard someone say "Lady," turned and was confronted by a man holding a gun. The gunman instructed her to lie face down. She said that she saw the gunman taking money from the cash drawers. Her description of the gunman's clothing was identical to that given by Carter. After

she heard the doorbell ring, she got up, observed the two men get into a light colored car. Following that car in her own vehicle, Mrs. Redford was able to obtain the tag number of the car before returning to the Tag Agency and reporting her findings to the police. Mrs. Redford identified the defendant as the one who had robbed her on October 25, 1973, and stated that there was no doubt in her mind as to that identification.

The defendant's first witness, Tony Lee, testified that he and his cousin, Michael White Bear, were involved in the robbery. Lee said that he and White Bear had borrowed a car from White Bear's sister and picked up Reginald Shelton and one Larry Ray, who then robbed the Tag Agency. Lee said that he did not know the defendant and the defendant did not participate in the robbery. He had not met the defendant until some time in May, 1974, in the Tulsa County Jail. According to Lee, it was Reginald Shelton who carried the nickel-plated revolver.

Lee, on cross-examination, stated that he had two robbery charges pending against him.

Mrs. Aletha Johnson stated that she had known the defendant for approximately fifteen years. On October 14th or 15th, Mrs. Johnson and the defendant had gone to Wichita, Kansas with Mrs. Johnson's daughter-in-law. The defendant was still in Wichita when Mrs. Johnson left there on November 3, 1973, she said. The defendant while in Wichita, was never out of her presence for more than two or three hours and it takes longer than that to drive between Wichita and Tulsa according to the witness.

Defendant testified that he was thirty-one years old and had three prior convictions in New Jersey. On October 25, 1973, he had been in Wichita at the home of Mrs. Johnson's daughter-in-law. He did not leave Wichita at all until his return to Tulsa in November. Kearney stated that he was arrested on January 23, 1974, and it was only after he was placed in a cell with Michael White Bear and Reginald Shelton that he became acquainted with those individuals. The defendant said he had been in the North Tulsa Tag Agency two days before his arrest helping a young lady replace her lost driver's license.

On cross-examination, the prosecutor asked the defendant if there had been a shotgun found in the car in which defendant was arrested. Defense counsel objected to this question as being evidence of a separate and distinct crime being raised to "taint" this witness [Tr. 133] The objection was overruled and defendant answered that he was not aware that a shotgun was found in the car.

The State offered the testimony of two rebuttal witnesses. Michael White Bear, the first such witness, testified that he, Tony Lee, Reginald Shelton and a fourth individual whose name he did not know, had committed the robbery on October 25, 1973. For his part in that robbery, White Bear had plead guilty to a lesser included offense and received three (3) years' probation. Because his eyesight was extremely poor, the witness could not visually identify the defendant as having been the fourth individual involved in the robbery; however, based on conversations had with that fourth person while committing the robbery and later conversations with a person who was identified to him as the defendant while in the same cell at the county jail, White Bear identified the defendant as the fourth person involved in the robbery. White Bear said that he identified the defendant's voice based on a slight accent.

Tulsa Police Officer Gary Gray was the second rebuttal witness. Gray said he had arrested the defendant on January 23, 1974. The only item taken from the vehicle in which defendant was riding was a sawed-off shotgun. This shotgun was later admitted into evidence as State's Exhibit #4. The State then rested, and defendant presented no testimony in surrebuttal.

█ On appeal the defendant raises two assignments of error. The first is that the prosecutor was allowed to engage in improper cross-examination of the defendant. Defendant argues that the questioning asserted as error had the effect of, and was intended to, show other crimes that the defendant may have committed near the time of his arrest.

The State's response to this is that the disputed line of questioning represented proper cross-examination. This is based on the belief that the defendant, on direct examination, had invited questioning on the circumstances surrounding his arrest. Concerning his arrest, defendant testified as follows at page 121 of the Transcript:

"Q. [BY MR. EARL]: When did you first become acquainted with any of these people [codefendants], if you have?

A. Like I said, in January, on January 23 I left my house to go to the Quik Trip on Peoria, I went in got a loaf of bread and I believe some cigarettes; when I came out the police arrested me and two other gentlemen in the car and took us downtown. This is January 23."

This was defendant's only direct testimony about the circumstances of his arrest.

On cross-examination, after asking some general questions about the arrest circumstances, the prosecutor asked, at page 132 of the Transcript:

"Q. [BY MR. TRUSTER]: Why did you do that? Who had the shotgun in the car?

BY MR. EARL: I object.

THE COURT: Hold it.

BY MR. EARL: I move to strike the statement of counsel as an improper question, no proper predicate, no previous testimony; move it be stricken and the jury admonished not to consider and move for a mistrial."

The Court overruled defense counsel's objection and defendant answered denying that any of the parties in the vehicle on January 23, 1974, had a shotgun.

The prosecutor's intent to link defendant with at least attempting another crime other than the one with which he was charged becomes clear in the following exchange, at page 133 of the Transcript:

"Q. [BY MR. TRUSTER]: You got the bread. The bread that you eat kind of bread?

A. Yes, yes."

This cross-examination is improper in that attempts to establish the commission of a separate and distinct offense. *Brown v. State,* Okl.Cr., 487 P.2d 963 (1971). As in *Brown,* the Court allowed the prosecutor to offer rebuttal testimony on this matter of why defendant was at the convenience store and the shotgun. Such rebuttal testimony was also inadmissible. See *Brown,* supra and the cases cited therein.

█ Defendant's second assignment of error is that the court erred in admitting into evidence the sawed-off shotgun that Officer Gray found. Defendant contends that this shotgun was not relevant to the offense charged; that the only purpose for offering the gun was to show evidence of other crimes that defendant may have committed. Defendant asserts that the admission of the weapon was highly prejudicial to him.

The State's response is that the shotgun was properly in evidence because it was admitted for the purpose of impeaching the defendant's testimony as to why he was at the convenience store. The fallacy of this argument is that the reason why defendant was at the convenience store is totally irrelevant to the robbery charged.

We have often stated that the defendant must be convicted, if at all, by evidence showing him to be guilty of the offense charged. See *Maiden v. State,* Okl.Cr., 273 P.2d 774 (1954).

█ The admission into evidence of the shotgun was error, as was the admission of the cross-examination and rebuttal testimony discussed under the first assignment of error. This brings us to the question of whether or not the admission of the testi-

mony and of the shotgun constitutes reversible error. We believe that based on the two unequivocal identifications of Mr. Carter and Mrs. Redford, there was more than ample evidence upon which the jury could find the defendant guilty as charged. We feel certain that a retrial of the defendant would result in a verdict of guilty. Therefore, the conviction is affirmed. However, it is equally clear that the reception of the evidence set forth above prejudiced the defendant and resulted in the jury giving him a longer sentence than they otherwise would have done. Accordingly, we are compelled to modify the sentence imposed from life imprisonment to a term of forty-five (45) years imprisonment. Modified and affirmed.

BRETT, P. J., concurs in result.

BLISS, J., concurs.